JOHN F. BUTTERWORTH, Respondent, *v.* WILLIAM CRAWFORD, Appellant.

The rule of law which creates an easement in favor of one of two tenements or heritages belonging to a single owner, upon the sale of one of them, is confined to cases where there is an *apparent* sign of servitude on the part of the other, which would indicate its existence to a person reasonably familiar with the subject upon an inspection of the premises.

The owner of two adjoining houses and lots in the city of New York, known as Nos. 83 and 85, built a vault half in the lot of each, extended the division fence over the centre of the vault, and then erected an outhouse for each dwelling, on either side of the fence, over the vault. A drain from the vault ran through the lot of No. 85. Defendant purchased No. 85, receiving a full covenant deed without reservation. After that, plaintiff purchased No. 83. Defendant closed up the drain.—*Held,* the servitude was not apparent, and no easement existed in favor of No. 83.

(Argued June 19th, 1871 ; decided November 10th, 1871.)

APPEAL from judgment of the General Term of the Court of Common Pleas, for the city and county of New York, affirming judgment entered upon the report of a referee.

The facts of this case, as found by the referee, are as follows : Henry Vulkening in 1864 owned two houses adjoining each other on the north side of Forty-sixth street, in the city of New York, known as Nos. 83 and 85 West Forty-sixth street. While such owner, he dug and formed a vault, extending partly into the yard of each house, and constructed a drain from such vault, running through the lot of house No. 85, to the sewer in Forty-sixth street. He then built a division fence between the yards of the two houses, extending from the rear of the houses to the rear of the lots, which fence was upon the division line, and crossed the vault in the center. He constructed an outhouse on either side of such division fence, over the vault for said house respectively, the roof of such outhouse extending a few inches above the fence.

After constructing such vault and outhouses, on the 11th day of December, 1865, he conveyed the house and lot No.

85 West Forty-sixth street, to the defendant in this action, by full covenant warrantee deed.

The defendant, immediately on the receipt of such deed, took possession of the said premises.   Thereafter, on the 26th day of January, 1866, Vulkening conveyed said house, known as No. 83 West Forty-sixth street to the plaintiff.

In the summer of 1866, the defendant built a privy on his premises No. 85 West Forty-sixth street, about twelve feet further towards the rear of his lot, and extended the drain to the vault of such privy, and then cut off the connection between that portion of the vault on the plaintiff's lot and the said drain.

The defendant upon the trial offered to show, that there was nothing in the appearance of the premises at the time he bought, to give notice that the privy was drained through his lot.   This was refused by the referee, and the defendant's counsel excepted.

The defendant's counsel also offered to prove, that the defendant had no notice when he bought, that the privy was drained through his lot.   This was refused by the referee, and the defendant's counsel duly excepted.

The referee, as conclusions of law, decided :   That the defendant had no right to cut off or obstruct the communication, from that part of the vault on the plaintiff's lot, through the drain on the defendant's premises to the sewer in the street.

That the plaintiff was entitled to judgment, restraining the defendant from continuing such obstruction, and requiring the defendant to open such drain, and to restore the same to the condition it was in at the time of the said conveyance to the plaintiff.

*N. Smith,* for appellant.   Where the owner conveys the servient tenement unqualifiedly, no easement is created in favor of the dominant tenement.   (3 Kent, 448; *Maynard* v. *Esher,* 5 Harris, 17 Penn., 222; *Burr* v. *Mills,* 21 Wend., 290; *Preble* v. *Reed,* 17 Me., 169; *Hawthorne* v. *Stimpson,*

10 Me., 224; *Hazard* v. *Robinson*, 5 Mason, 272; *McTavish* v. *Carroll*, 7 Md., 352; *Johnson* v. *Jordan*, 2 Met., 234; *Callan* v. *Hocher*, 1 Rawle., 108; *Brakely* v. *Sharp*, 2 Stockton, 206; S. C., 1 Stockton, 10; *Stuyvesant* v. *Woodruff*, 1 Zabriskie, 133; *Fetters* v. *Humphrey*, 3 E. Greene, 260, 265.) Volkening and those claiming under him are estopped by the covenants in his deed. (Greenleaf's Cruise on R. P., 611; *Jackson* v. *Stevens*, 13 Johns., 316; *Kellog* v. *Wood*, 4 Paige, 528; *Vanderhiden* v. *Crandall*, 2 Den., 9; S. C., affirmed, 1 N. Y., 496.)

*H. R. Selden*, for respondent. Plaintiff had a right to the maintenance of the drain as an easement. (Civil Code, art. 692; *Nicholas* v. *Chamberlain*, Cro. Jac., 121; *Sherry* v. *Pigot*, Palmer, 444; Popham, 166; *Palmer* v. *Fletcher*, 1 Lev., 122; *Pyer* v. *Carter*, 1 Hud. & Nor., 916; *Suffield* v. *Brown*, 9 Jurist's N. S., 999; *Ewart* v. *Cochrane*, 7 Jurist's N. S., 925; *Dodd* v. *Burchill*, 1 H. & Colb., 121; *Hall* v. *Lund*, 1 H. & Colb., 681; *Worthington* v. *Gimson*, 2 Ellis & Ellis, 618; *Polken* v. *Bastard*, 4 Barb. & Smith, 258; *Cary* v. *Daniels*, 8 Metc., 466; *Whitney* v. *Eames*, 11 Metc., 517; *Dunkler* v. *W. R. R. Co.*, 4 Foster, 489; *Lampman* v. *Milks*, 21 N. Y., 505; *Seymour* v. *Lewis*, 13 N. J., 489; Gale on Easements, 2d ed., p. 53.) The deed did not destroy the right; the drain was not an encumbrance. (*Dunkler* v. *W. R. R. Co.*, 4 Foster, 489; *Petter* v. *Hawes*, 12 Pick., 323; *Cary* v. *Daniels*, 8 Metc., 466; *Patterson* v. *Anthon*, 9 Watts, 154.)

RAPALLO, J. We have come to the conclusion, that the drain in controversy, did not constitute an *apparent* servitude or easement, and that consequently the case does not present the question so fully argued before us, whether when a dominant and servient tenement are owned by the same person, and he makes a conveyance of the servient tenement first, with covenants of warranty, and against encumbrances, and without the express reservation of any easement, such conveyance will preclude him or his assigns, from afterward asserting

in favor of the dominant tenement, which he retains, the benefit of the easement in the premises so conveyed. We therefore refrain from expressing an opinion upon that point. All the authorities cited on the argument, by the learned counsel for the respective parties, concur in holding, that the rule of law which creates an easement on the severance of two tenements or heritages, by the sale of one of them, is confined to cases, where an *apparent sign* of servitude exists on the part of one of them in favor of the other; or as expressed in some of the authorities, *where the marks of the burden are open and visible.*

Unless therefore, the servitude be open and visible, or at least, unless there be some apparent mark or sign, which would indicate its existence to one reasonably familiar with the subject, on an inspection of the premises, the rule has no application.

There was nothing in the situation or appearance of the premises, to indicate that there was any drain from the privies in question. Drains are not a necessary accompaniment of privies constructed as these were. In cities, municipal regulations provide for their being cleansed by licensed public scavengers, and this practice is frequently brought to the notice of the inhabitants in a very obvious manner. No evidence was introduced to show that drains from them were usual in the locality in question. But had such evidence been given, it does not appear, that there was anything to indicate, that the privy of the neighboring house was drained through the lot sold to the defendant.

In the case of *Pyer* v. *Carter* (1 Hurl. & Nor., 916), which was much relied upon on the argument, and in the opinion of the learned court below, the dominant and servient tenement had originally been one house. This house had been divided into two parts. The drainage was of the water which fell upon the roof, and it may well be, that the situation and arrangement of the building were such as to indicate, that some drain necessarily existed as an appurtenent to the house, and that upon the division of the house into two parts, that

drain became common, and afforded drainage for both of the parts through one of them.

Such seems to have been the fact; for the court says, in rendering judgment, that "the defendant must have known, or ought to have known, that some drainage existed, and if he had inquired, would have known of this drain."

That decision recognizes the necessity of establishing, that the servitude is apparent, or that there is an apparent mark or sign of it, and seems to be based on the fact, that the situation and construction of the premises afforded such a sign.

In Washburn on Easements (2d ed., p. 68), the learned author, after reviewing the cases on this subject, states that he considers the doctrine of *Pyer* v. *Carter* confined to cases, where a drain is necessary to both houses, and the owner makes a common drain for both; and this arrangement is apparent and obvious to an observer.

If *Pyer* v. *Carter* goes further than that, or, at all events, if it applies to cases where there is no apparent mark or sign of the drain, it is not in accordance with the current of the authorities.

The bearing of that case upon the question, whether the alleged easement was one of necessity, upon the point as to the order in which the tenements were sold, and upon the other questions, which were argued before us with so much learning and ability, need not be now considered, as we do not propose at this time to decide those questions; and for the same reason, we forbear reviewing the numerous other authorities to which we have been referred, basing our decision upon the single ground, that the servitude claimed was not apparent.

The judgment should be reversed and a new trial granted, with costs to abide the event.

All concur.

Judgment accordingly.