# NEW YORK COMMON PLEAS.

## JONATHAN N. HAVENS agt. CHRISTIAN KLEIN.

*Easements — light and air — fire-escape — permanent injunction.*

Where a common owner of two tenements — the windows of one of which overlook the yard of the other and receive light and air therefrom, its shutters swing out over such yard, and access from its fire-escapes, which overhang the yard, being had to such yard — severs the same by conveyances to different persons, an easement in favor of the tenement so overlooking the other, it being the one first conveyed, is created in respect to light and air, the swinging of the shutters, and access to and from the fire-escapes.

Such easement is an apparent one. The grantee of the servient tenement, the one later conveyed, is deemed to have actual notice of such easement, and takes his title subject thereto.

In such case it is immaterial whether such severance be by deed or mortgage, inasmuch as by foreclosure the mortgage is ripened into a deed.

*Special Term, February,* 1875.

The facts in this case were as follows:

Plaintiff was the owner of the premises No. 125 East Fiftieth street, in New York city, situated on the north side of Fiftieth street, sixty feet west of Lexington avenue, and being twenty feet in width by forty-nine feet deep. Defendant owned premises on the west side of Lexington avenue, forty-nine feet north of Fiftieth street, twenty feet in width and eighty feet deep. A house on plaintiff's lot — a French flat — extended the whole depth of his lot. A house on defendant's lot, likewise a French flat, extended sixty feet deep. So that the northeasterly corner of plaintiff's house impinged the southwesterly corner of defendant's house.

Havens agt. Klein.

The relative positions are shown on the following diagram:

Plaintiff's house had five stories, with three windows in each, looking out over the yard belonging to defendant. These windows each had shutters which swung out over defendant's said yard.

.And in the angle of the houses were built fire-escapes for ·each story, for the mutual use of each house, access thereto being had from the windows of the same.

These premises, in the state described, had at one time been owned by a common owner, one. Buddensick, who, while owner of both lots, had in 1871 built the houses in the manner stated.

He thereafter mortgaged both, executing, the mortgage upon the Fiftieth street house first. It was also recorded first. This mortgage contained the usual grant of said premises with all the "rights, privileges, hereditaments and *appurtenances* thereunto belonging." Both mortgages were in time foreclosed. And under the decrees in foreclosure, and sundry mesne conveyances, the title to the Fiftieth street house became vested in plaintiff; that to the Lexington avenue house in defendant.

In November, 1874, defendant built in his said yard, *close* to plaintiff's house, but upon his own land, a scaffolding forty-five feet high, upon which, opposite each of plaintiff's windows, he affixed boarding, flat up against the wall of plaintiff's house, in such a manner that none of the shutters of plaintiff's rear windows could be opened, access to the fire-escapes out of the windows was prevented, and all light and air through the windows excluded, and the value of the house in that state, as an inhabitable dwelling, reduced to almost nothing.

Upon these facts the plaintiff brought this action, to restrain the defendant from continuing such obstructions, and to have his right to light and air through such windows from defendant's land, and to swing his shutters on defendant's land, and to have access undisturbed to said fire escapes declared and enforced, and for a perpetual injunction.

According to the practice of the state of New York, an order to show cause why an injunction should not be granted pending the action, was obtained, with a temporary injunction meantime, and on the return of such order, defendant appeared to show cause, and moved to vacate the temporary injunction, plaintiff moving to make it permanent.

*Nelson Smith & John Brooks Leavitt*, of counsel for plaintiff, cited *Lampman* agt. *Mills* (21 *N. Y.*, 505); *Voorhees* agt. *Burchard* (55 *N. Y.*, 98); *Butterworth* agt. *Crawford* (3 *Daly*, 57); *S. C.* (46 *N. Y.*, 349); *Webster* agt. *Stevens* (5 *Duer*, 553); *Eno* agt. *Del Vecchio* (6 *Duer*, 17); *Hendricks* agt. *Stark* (37 *N. Y.*, 106); *Compton* agt. *Richards* (1 *Price*, 27); *Pyer* agt. *Carter* (1 *Hurlst. & Nor.*, 916); *Rivreri* agt. *Bower* (1 *Russell & Miture's Rep.*, 24); *3d Blackstone*, 218; *F. N. B.*, 183; 2 *Roll. Abr.*, 140; *Wash. on Ease.*, 492, 575, 577; 2 *Story Eq.*, §§ 925, 926; 1 *Fonbl. Eq.*, 3d note; 2 *Wash. Real Prop.*, 316–319; *Meyers* agt. *Gemmel* (10 *Barb.*, 543); *Story* agt. *Odin* (12 *Mass.*, 157).

Havens agt. Klein.

*Julius J. Frank,* of counsel for defendant, cited *Mahan* agt. *Brown* (13 *Wend.*, 261); 2 *Wash. Real Prop.*, 316–319; *Pickard* agt. *Collins* (23 *Barb.*, 444); *Bary* agt. *Pope* (*Cro. Eliz.*, 118); *Palmer* agt. *Wetmore* (2 *Sandf.*, 316); *Parker* agt. *Foote* (19 *Wend.*, 309); *Meyers* agt. *Gemmel* (10 *Barb.*, 537); *Hoffman* agt. *Armstrong* (46 *Barb.*, 337); *Relyea* agt. *Beaver* (34 *Barb.*, 547); *People* agt. *Central R. R. Co.* (42 *N. Y.*, 283); *Collier* agt. *Pierce* (7 *Gray*, 18); *Pheysey* agt. *Vicary* (16 *M. & W.*, 484); *Johnston* agt. *Jordan* (2 *Met.*, 234); *Cartrey* agt. *Willis* (7 *Allen*, 364); *Randall* agt. *McLaughlin* (10 *Allen*, 366); *Brakely* agt. *Sharp* (1 *Stockton Ch.*, 9); *S. C.* (*Id.*, 206).

DALY, *C. J.* — Much of the law discussed upon this motion has, in my judgment, no bearing upon the question which arises in the case. It is settled in this state that no right to the use of light and air in a building overlooking the land of another is acquired by use, enjoyment or pre-emption. It can pass only by express grant or covenant, and will not pass by implication of a grant (2 *Washburn on Real Property*, 319 [3*d* ed.], *sec.* 39), unless it is necessary to the enjoyment, and was clearly intended from the circumstances existing at the time when the conveyance was made (*Voorhees* agt. *Burchard*, 55 *N. Y.*, 98; *Comstock* agt. *Johnson*, 46 *id.*, 615; *Huttermeyer* agt. *Albro*, 18 *id.*, 48; *Nicholas* agt. *Chamberlain*, *W. Lac.*, 121; *New Ipswith Factory* agt. *Batchelder*, 3 *N. H.*, 190; *United States* agt. *Appleton*, 1 *Sumn.*, 492).

The two lots in this case originally belonged to the one owner; the lot on the westerly side of Lexington avenue extending back eighty feet so as to meet the rear of the lot on the northerly side of Fiftieth street, along which lot the rear of the Lexington street lot extended for twenty feet.

On the Fiftieth street lot the then owner erected a building covering the whole of that lot as it now exists. In the rear of which lot he placed windows for light and air overlooking the rear of the Lexington street lot, and on the Lexington

street lot he erected a building sixty feet-deep, for which the rear of the lot for the remaining twenty feet served as a yard, which yard was overlooked by the windows of the building on the Fiftieth street lot, and in the yard he erected a fire-escape for the joint use of the two buildings.

The two lots were severed by the foreclosure of mortgages given by the owner and the sale of the lots, as separate lots, under which sales the plaintiff has become the owner of the Fiftieth street lot, and the defendant of the Lexington avenue lot. The defendant claiming the right to the exclusive use of the yard, has erected a wooden fence, by which he has cut the plaintiff off from the use and enjoyment of the windows in the rear of the building on the Fiftieth street lot, and also from the use of the fire-escape.

The question in the case is, whether the plaintiff, at the severance of the two lots, had a right to the light and air from the windows in the rear of his building, and to the use of the fire-escape, of which the defendant could not deprive him, and, it appears to me, that the case comes clearly within the rules illustrated by SELDEN, J., in *Lampman* agt. *Mills* (21 *N. Y.*, 511). " If," says Judge SELDEN, " both proprietors obtained their title from a common source, the same grantor having conveyed the tenement with the windows to one and the ground overlooked to another, the windows cannot be obstructed, and the reason is that the relative qualities of the two tenements must be considered as fixed at the time of their severance ; each retains as between it and the other the properties then *visibly* attached to it, and neither party has the right afterwards to change them," for which he relies on *Cox* agt. *Matthews* ( *Ventris*, 237), a case which fully bears out what he states.

The rule of the common law is, says Judge SELDEN, that where the owner of two tenements sells one of them, the purchaser takes the tenement sold with all the benefits and burdens *which appear* at the time of the sale to belong to it and the property which the vendor retains, which, he adds, is

Havens agt. Klein.

one of the recognized modes by which an easement or servitude is created.   If the burden, he remarks, is *open* and *visible*, the purchaser takes the property with the servitude upon it.

The parties are presumed to contract in reference to the condition of the property at the time of the sale, and neither has the right by altering arrangements then *openly* existing to change materially the relative value of the respective parts.

In the subsequent case of *Butterworth* agt. *Crawford* (46 *N. Y.*, 349), the judgment of this court was reversed solely upon the ground that the servitude was not open and visible.

The rule above stated was not questioned ; but the decision was put upon the ground that there must be some mark or sign which would indicate the existence of the servitude to one reasonably familiar with the subject.   Upon an inspection of the premises for this, the present case, the right which was claimed was open and visible, as it was the windows in the rear of the house on the Fiftieth street lot, and the fire-escape which had been built for the joint use of both houses.

In *Robins* agt. *Barnes* (*Hob.*, 131), the two adjoining houses were so built, the one overhung a portion of the other, and, although this overhanging was originally wrongful, yet as both houses afterwards became the property of one person, and through him were divided, it was held that they were taken as they were at the time of the conveyance by which they were severed, and that the owner of the house which overhung was entitled, upon taking it down, to rebuild the new house so as to overhang in the same manner; and it has been recognized in several cases, that if one owning a house with windows looking out upon adjoining land of his own, sell such house, he cannot afterwards build upon the adjoining land, so as to stop or obstruct the light of such windows (*Story* agt. *Odin*, 12 *Mass.*, 157 ; *Grant* agt. *Chase*, 17 *id.*, 443 ; *Cherry* agt. *Klein*, 11 *Md.*, 24 ; 2 *Washburn on Real Property*, *p.* 318 [*3d ed.*], *D.* 36, *and note*).

It can make no difference in the application of this rule whether the severance took place by a direct grant from the

Havens agt. Klein.

owner, or arose by the transfer of his interest upon foreclosure sale, for the reason of the rule applies as much in the one case as in the other. The question is, what did each party get on the severance? Did the purchaser of the Lexington avenue lot, who bought, as would appear from the pleadings, after the plaintiffs purchased, take that lot subject to the plaintiff's right to the joint use of the fire-escape, and to the use of the windows in the rear of the building for light and air?

In my judgment he did, and I shall, therefore, deny the motion to dissolve the injunction.